**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

**REDACTED**

| | |
|---|---|
| PMTECH, INC.,<br>Plaintiff,<br>*v.*<br>THE UNITED STATES,<br>Defendant. | Civil Action No.:<br>(Related to *PMTech, Inc. v. The United States*, 07-641, Judge Horn) |

**COMPLAINT**

PMTech, Inc. ("PMTech") brings this action under 28 U.S.C. § 1491(b) seeking injunctive and declaratory relief.

**Nature of the Action**

1. This action is a post-award protest against the evaluation of proposals by the United States Department of Energy, Office of Health, Safety, and Security, Office of Classification ("DOE") under Solicitation No. DE-RP01-07HS07002 (the "RFP") and DOE's selection for award of Excalibur Associates, Inc. ("Excalibur"). This procurement was set aside for small business concerns. Despite that, DOE made award to a firm that is unduly reliant on large business CSC Systems & Solutions LLC ("CSC"). For more than four years, since 2003, DOE repeatedly has awarded sole-source contracts to CSC for the Guidance Development work that is being procured (in part) by the RFP that is the subject of this Complaint. DOE's contract award to Excalibur arbitrarily continues DOE's pattern of awarding the Guidance Development work for performance by large business CSC.

2. In addition, in making award to Excalibur, DOE arbitrarily relied on a size determination of the U.S. Small Business Administration ("SBA") Area V that DOE knew

or should have known was premised on factual errors. The SBA found that [redacted] of Excalibur's [redacted] would be [redacted] (Size Determination at 13), that Excalibur's [redacted] would be [redacted] (*id.* at 5), that Excalibur would [redacted] (*id.* at 7-8) and that [redacted] the contract awarded to Excalibur (*id.* at 6). Upon information and belief, at least [redacted] that SBA found would be [redacted]. Thus, according to SBA Area V, the [redacted] that Excalibur proposed to [redacted] and the [redacted] that would [redacted], represent at least [redacted] of the [redacted] that Excalibur proposed to [redacted] Despite that, SBA Area V excused Excalibur's [redacted] from [redacted] because it found that there was [redacted] that Excalibur could [redacted]. *Id.* at 13. That basis for the size determination was factually incorrect. And, DOE knew or should have known that the size determination was premised on a factual error.

3. On information and belief, SBA Area V made its finding about [redacted] based on information provided by DOE and/or Excalibur. SBA's Area V Office deprived PMTech of due process and of its statutory right to fully participate in the adjucative process and never gave PMTech the opportunity to address that issue. This issue is central to PMTech's Complaint because if DOE or SBA Area V had found that Excalibur was affiliated with CSC, Excalibur would not have been eligible for award of the contract that is the subject of this Complaint.

4. DOE's selection of Excalibur also was arbitrary because it was based on DOE's misevaluation of proposals and failure to follow the RFP. Specifically, DOE arbitrarily assigned weaknesses to PMTech's proposal and failed to assign strengths and significant strengths that PMTech deserved. On information and belief, DOE did the converse regarding Excalibur's proposal, assigning strengths that were not deserved and failing to assign weaknesses that should have been assigned.

5. On information and belief, DOE also assigned Excalibur strengths for work that Excalibur has [redacted]. On information and belief, DOE assigned Excalibur technical strengths and high adjectival ratings for personnel qualification, technical approach and past performance that were based on the [redacted]—at the same time that DOE and SBA Area V found that Excalibur was [redacted]. Essentially DOE selected Excalibur for award because of [redacted] at the same time that it (and SBA Area V) found that Excalibur was [redacted]

6. DOE also conducted misleading discussions with PMTech and induced PMTech to increase its proposed estimated costs.

7. DOE's award document to Excalibur appears to incorporate an offer received from Excalibur on January 31, 2008. The due date for submission of offers for this contract was April 6, 2007. *See* RFP § L.9 at 63. To the extent that DOE permitted Excalibur to amend its offer without giving PMTech the same opportunity, DOE acted arbitrarily and contrary to law.

8. Alternatively, DOE improperly bundled two scopes of work and set aside the combined contract for small businesses despite having had no reasonable expectation of receiving qualifying offers from two small business concerns. This violated the Small Business Act, 15 U.S.C. §631(j)(3), the Competition-in-Contracting Act, and implementing regulations including 48 C.F.R. § 19.502-2(b) and 48 C.F.R. § 19.202-1. DOE documents reveal that DOE knew before it issued the RFP that it did not have a reasonable expectation of receiving qualifying offers from two small businesses. DOE's expectation was borne out, among other things, by the fact that DOE evaluated PMTech's proposal as [redacted], and the fact that Excalibur [redacted]. On information and belief, DOE improperly bundled the two scopes of work for the purpose of again acquiring the services of CSC, this time through a small business.

9. All of DOE's actions have resulted in its continuing to retain large business CSC to perform the Guidance Development work that was supposed to be the subject of a small-business set-aside procurement.

**Parties**

10. PMTech is a full-service, certified 8(a) Small Disadvantaged Business, and Woman-Owned Business that has provided classification/declassification, engineering, environmental, program and project management resources support to government and private clients since 1997. PMTech is incorporated under the laws of the State of Colorado and has its principal place of business at 6355 Ward Road, Arvada, CO 80004.

11. Defendant is the United States Government, acting through the DOE and, separately, the SBA.

## Jurisdiction

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(b).

## Procedural History and Related Case

13. On or about March 1, 2007, DOE issued the RFP for specialized technical, analytical and administrative support services for the Office of Health, Safety, and Security, Office of Classification.

14. The RFP was issued following a series of sole-source awards to CSC and several GAO protests.

15. While the RFP was pending, PMTech filed a protest in this Court against yet another contemplated sole source award to CSC. That case was docketed as Case No. 07-641C and assigned to Judge Horn, and is pending.

16. On information and belief, CSC was the incumbent contractor for a large part of the work covered by the RFP -- the so-called "Guidance Development" portion of the work -- under a contract that ended in 2003. On December 18, 2003, DOE awarded CSC a sole source "bridge contract," ostensibly to give DOE time to prepare a solicitation to acquire the same services through a competitive procurement. PMTech does not know why DOE had failed to prepare a competitive procurement before the original CSC contract ended in December 2003.

17. The sole source "bridge contract" awarded to CSC in 2003 had a maximum performance period of 24 months, ending in December 2005.

18. During 2003-2005, DOE did not announce a competitive procurement for the Guidance Development work covered by the first CSC sole source contract. Instead, on or about January 31, 2005, DOE published a notice stating that it intended

to consolidate the Guidance Development work with another existing contract. That notice stated expressly, "Proposals are not requested at this time." The notice further stated that a competitive solicitation will be issued. That notice did not request any information from potential sources.

19. By letter dated July 14, 2005, the SBA wrote to PMTech attaching the January 31, 2005 notice and asking PMTech to submit a capability statement and references. On or about August 1, 2005, PMTech did submit its Statement of Qualifications ("SOQ"), including a capability statement and references.

20. In its SOQ, PMTech noted that it has extensive experience with the type of work covered by the January 31, 2005 notice, including management of DOE classified and sensitive information. The qualifications described in PMTech's SOQ included the fact that PMTech had performed similar or related services under four then-current or recent DOE contracts (DE-AM34-01RF02006, DE-AM09-01RF02006, DE-AC09-05RF02110 and DE-AC52-04NA25495).

21. SBA confirmed to PMTech that SBA had received PMTech's SOQ. PMTech understood that SBA would forward PMTech's qualifications to DOE. On information and belief, SBA was going to identify the Guidance Development work as appropriate for a small business set aside. Nevertheless, in 2005, DOE did not announce a competitive procurement, either as a small business set aside or on an unrestricted basis.

22. Instead, on November 10, 2005, DOE published an announcement on the FedBizOpps website stating that it intended to extend, on a sole source basis, the period of performance of CSC's then-current sole source contract, purportedly to

provide uninterrupted support while a new procurement was competed. In fact, no competitive procurement was announced in that time frame.

23. On November 21, 2005, PMTech filed a GAO protest against the proposed sole source award to CSC. A related GAO protest also was filed by another interested party, M.D. Thompson Consulting, LLC. These protests were docketed by GAO as case numbers B-297616 and B-297616.2.

24. PMTech's GAO protest argued among other things that: "DOE's plan to award a sole source contract to CSC is arbitrary because it is based on the agency's mistaken assumption that CSC is the only responsible source that can meet DOE's schedule; DOE's plan to award a sole source contract to CSC is arbitrary because any necessity for the use of non-competitive procedures is due to DOE's lack of advance planning; [and] DOE is limiting competition arbitrarily by not confining the sole source award to one three month contract." *See* Protest of PMTech dated Nov. 21, 2005 at 2.

25. GAO sustained PMTech's protest. Among other things, GAO stated:

> Here, the notice, as issued, did not meaningfully describe DOE's requirements. As quoted above, the notice merely identifies the contract number that is being extended and indicates that the work involves "critical, highly specialized technical and administrative support," yet provides essentially no information about the experience and abilities that DOE believes potential sources need to have. Even though the agency's evaluation of the two capability statements identifies numerous specific topics as being essential to successful performance, or even "of utmost importance," none of these capabilities is mentioned in the synopsis. In our view, DOE's requirements were not adequately described in the notice, and the notice did not provide enough information to allow prospective sources a meaningful opportunity to demonstrate the ability to meet the agency's requirements. . . .
>
> By providing an inadequate description of its sole-source procurement in the synopsis, DOE restricted competition in

> violation of statute and regulation. Moreover, DOE compounded the shortcomings of this particular notice by providing no information on the availability of a statement of work and by stating in the synopsis that the notice "is for informational purposes only and is not a request for proposals or other information." The protesters and the Small Business Administration (SBA) argue, and we agree, that the language of the synopsis discouraged, and may have been intended to discourage, responses.

*M.D. Thompson Consulting, LLC; PMTech, Inc.*, B-297616, B-297616.2, February 14, 2006, 2006 CPD ¶ 41, at 5-6 (citations and footnotes omitted).

26. GAO also found that DOE did not evaluate PMTech's capability statement fairly. GAO said:

> In preparing its capability statement, PMTech referred to a copy of the statement of work from contract No. DE-AC01-04SO20188 (CSC's contract), which PMTech states it obtained from an unnamed third party. Even though that statement of work provided some additional information about the services required, the record does not establish, and DOE does not argue, that PMTech could have understood from that statement of work the areas to be addressed, and the importance of certain areas. Nevertheless, since PMTech included a copy of the statement of work as an exhibit to its supplemental comments, we have reviewed it, and agree with PMTech that the statement of work from the CSC contract does not identify any of the areas that the DOE evaluation asserts needed to be addressed in the capability statements (including isotope separation technology, an area that DOE identifies as being "of utmost importance").

*Id.* at 4 n.5.

27. Accordingly, GAO wrote in its decision:

> In light of this determination, we recommend that DOE, as promptly as practicable, issue a revised synopsis that adequately communicates DOE's specific requirements and requests capability statements, and that DOE review those capability statements in conformance with the requirements disclosed in the synopsis. Only after reviewing responses to the revised synopsis should DOE consider whether it has a

> legal basis for any further sole-source contract action. If DOE concludes that it does not have a basis for a sole-source contract, DOE should acquire these services on a competitive basis. We also recommend that the agency reimburse Thompson and PMTech the reasonable costs associated with filing and pursuing these protests, including reasonable attorneys' fees.

*Id.* at 6-7 (footnote omitted). GAO awards protestors their protest costs only when the agency's solicitation, proposed award, or award does not comply with statute or regulation. *See* 4 C.F.R. § 21.8(d).

28. On December 20, 2005, while PMTech's protest was pending, DOE again extended CSC's contract on a sole-source basis.

29. In a footnote to its decision, GAO stated: "[W]e conclude that the sole-source contracting action extending CSC's contract did not conform to statute and regulation[.]" 2006 CPD ¶ 41, at 7 n.12.

30. On or about March 3, 2006, approximately two weeks after GAO's decision that the sole source award to CSC was improper, DOE published a FedBizOpps notice of another sole source extension of CSC's contract.

31. On or about April 13, 2006, DOE issued an RFP (DE-RP01-06SO20218) that bundled the Guidance Development work covered by the GAO protest together with other work -- the so-called Document Review contract. On May 12, 2006, PMTech filed a new (second) GAO protest asserting that RFP DE-RP01-06SO20218 violated CICA, the Small Business Act, and the Federal Acquisition Regulation ("FAR") because that RFP unnecessarily and unjustifiably bundled contract requirements in a manner that precluded small business participation in the procurement as prime contractors. This protest was docketed by GAO as case number B-298307. Another interested party,

Systems Management and Research Technology Corporation, Inc. ("SMARTECH"), filed a similar protest, which was docketed by GAO as case number B-298307.2.

32. On June 21, 2006, GAO held an outcome prediction alternative dispute resolution conference regarding PMTech's second protest and informed DOE that GAO was likely to find that the procurement was improperly bundled. By letter dated June 28, 2006, DOE informed GAO that "in response to the outcome prediction alternative dispute resolution provided by your office last week, [DOE] has determined that it is appropriate to take corrective action in the above-stated consolidated protest. To that end, DOE has cancelled Solicitation No. DE-RP01-06SO20218."

33. By letter dated July 5, 2006 PMTech asked GAO to "recommend that [DOE] reimburse PMTech reasonable costs of filing and pursuing the above-referenced protest, including attorneys' fees[.]" Such relief is permitted by GAO's rules only when a solicitation, proposed award, or award does not comply with statute or regulation. *See* 4 C.F.R. § 21.8(d) & (e). By letter dated July 14, 2006, DOE stated that it did not contest PMTech's entitlement to protest costs.

34. On July 25, 2006, DOE issued "Solicitation" DE-RI01-06SA00002, which was not actually a solicitation, but rather a request for information and qualifications. DOE stated in that document that: "The Department is considering whether to award a single contract, or two separate contracts, for this effort[.]" On or about August 25, 2006, PMTech submitted an "Expression of Interest and Demonstration of Capability" in accordance with the terms of the "solicitation."

35. DOE's review of PMTech's and other concerns' capability statements was reflected in several Capability Statement Reviews, some of which were dated October

13, 2006 (Administrative Record, Tab 113, pages 2113-2157, in Case No. 07-641). The review showed that there were not two small business concerns capable of performing both the Guidance Development and Document Review work. However, DOE did find that there were small businesses (including PMTech) capable of performing one or the other category of work. DOE did not disclose these facts to PMTech.

36. On January 3, 2007, DOE issued a synopsis of the RFP from which this action arises (DE-RP01-07HS07002), but did not issue the RFP itself. Despite the evidence referred to in the previous paragraph, DOE announced its intention to conduct a combined procurement.

37. On March 1, 2007, DOE issued the RFP, which is the subject of this Complaint. The RFP was a competitive solicitation for the combined Guidance Development and Document Review work and was set-aside for small business concerns. On information and belief, at the time that DOE issued the RFP it did not have a reasonable expectation that it would receive offers from at least two responsible small business concerns "offering the products of different small business concerns. . . ." 48 C.F.R. § 19.502-2(b).

38. DOE asked prospective offerors for the contract to submit an Intention to Propose. *See* RFP at L.37. On March 20, 2007, PMTech submitted to DOE an Intention to Propose on the contract. PMTech does not know whether Excalibur or other companies submitted an Intention to Propose.

39. On or about April 6, 2007, PMTech submitted a timely proposal in response to the RFP.

40. On or about June 9, 2007, DOE completed its initial evaluation of the proposals submitted in response to the RFP.

41. Despite having completed the evaluation of initial proposals in the first half of June 2007, DOE did not announce a competitive range, hold discussions with offerors, seek clarifications from offerors, or take any other public action with respect to the RFP until Judge Horn ordered in September 2007 that DOE provide her with a milestone schedule for the remainder of the procurement.

42. On August 3, 2007, DOE announced on the Federal Business Opportunities website (www.fedbizopps.gov) that, on September 4, 2007, it planned to award another sole source contract to large business CSC for the Guidance Development work.

43. DOE's so-called "Presolicitation Notice" stated in part:

> The extended period of performance will be from September 22, 2007 through September 21, 2008. The first three month option period starts December 22, 2007 and the second three month period starts March 22, 2008. This extension is being made noncompetitively based on the exclusion found at Federal Acquisition Regulation, FAR 6.302-1(a), which authorizes other than full and open competition when there is only one responsible source and no other supplies or services will satisfy agency requirements within the required time-frame.

44. In fact, in August 2007 DOE knew that PMTech was qualified to perform the Guidance Development work.

45. DOE's notice stated that the purpose of the sole source award was--

> to provide uninterrupted support while a new competitive procurement is competed that will replace the CSC contract. See FedBizOpps Synopsis number DE-RP01-07HS07002 issued on March 1, 2007 (the RFP). Proposals have been submitted, evaluation is underway, and award is anticipated under the RFP in the near future.

46. On August 31, 2007, PMTech submitted a timely capability statement in response to the August 3, 2007 Presolicitation Notice which again demonstrated PMTech's capability to meet DOE's needs as described in the Presolicitation Notice.

47. Also on August 31, 2007, PMTech filed a complaint against the proposed award to CSC, *i.e.*, the case which now is pending before Judge Horn (No. 07-641C).

48. Despite having received PMTech's capability statement, DOE extended CSC's sole source "bridge" contract again (in one month increments) in September, October, November and December 2007.

49. DOE purportedly reviewed PMTech's capability statement and claimed that PMTech was not capable of performing the bridge contract.

50. Later during the course of the action pending before Judge Horn, DOE agreed to award the "bridge contract" to PMTech instead of CSC if SBA issued a Certificate of Competency ("COC") for PMTech.

51. SBA did issue a COC for PMTech, but DOE reneged on its promise and did not award the bridge contract to PMTech.

52. On September 14, 2007, DOE sent PMTech [redacted] discussion questions regarding PMTech's initial proposal. DOE gave PMTech ten business days to prepare answers that would serve as the basis of the final proposal revision.

53. PMTech requested more time to prepare its answers but DOE denied the request, citing PMTech's pending lawsuit as a reason that DOE allegedly could not change the procurement schedule. This was unreasonable because PMTech informed DOE that PMTech would support a request to the Court to extend the procurement

schedule. Furthermore, the procurement already had been delayed so long by DOE that another two weeks would not have harmed DOE.

54. PMTech was prejudiced by DOE's unreasonable refusal to allow PMTech more time to respond to the discussion questions. PMTech believes that had DOE allowed it further time to prepare answers to the discussion questions, PMTech would have improved its proposal.

## Selection of Excalibur and PMTech's Size Protest

55. On December 14, 2007, DOE issued the notice required by FAR § 15.503(a)(2) stating that Excalibur had been selected as the apparently successful offeror.

56. On December 17, 2008, PMTech filed a timely size protest against Excalibur asserting that Excalibur was [redacted], and that Excalibur should be regarded as large for purposes of the procurement.

57. PMTech's size protest was based in part on SBA's regulations, which state in relevant part:

> A contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that performs primary and vital requirements of a contract, or of an order under a multiple award schedule contract, or a subcontractor upon which the prime contractor is unusually reliant. All aspects of the relationship between the prime and subcontractor are considered, including, but not limited to, the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent

> contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation.

13 C.F.R. § 121.103(h)(4).

58. Judge Horn issued an order which permitted PMTech to cite and quote from Excalibur's initial proposal in PMTech's size protest, subject to a protective order issued by Judge Horn. Quoting directly from Excalibur's initial proposal, PMTech asserted that Excalibur planned to [redacted]

59. SBA's size determination acknowledged that Excalibur would rely on CSC for its [redacted], [redacted]. Size Determination at 5, 7, 8 and 13. SBA also seemed to recognize that [redacted] usually is a sign of a small prime contractor's undue reliance on an ostensible subcontractor. However, SBA Area V wrongly found that such [redacted] is permitted where [redacted] SBA Area V apparently was wrongly led to believe that this contract involves such a situation. Size Determination at 9 and 13.

60. PMTech's size protest also asserted that Excalibur's proposal did not [redacted] *See* Size Protest at 12. The size determination appears to acknowledge this fact, stating that Excalibur [redacted] which [redacted] for a small business set-aside. Size Determination at 7.

61. PMTech's size protest also asserted that Excalibur is [redacted] *See* Size Protest at 17. The size determination confirmed this fact. *See* Size Determination at 7-8.

62. SBA's size determination appears to rely largely on arguments and unverified facts asserted by Excalibur's attorney. For example, rather than discuss whether Excalibur actually has [redacted], the size determination accepted at face value the statement by the Excalibur attorney that [redacted] Size Determination at 4.

63. PMTech's size protest contained other assertions besides those discussed above, some of which were not addressed in the size determination. For example, PMTech's size protest cited Excalibur's initial proposal as stating that Excalibur had [redacted] the contract and that the [redacted] that Excalibur [redacted] equals [redacted]% of [redacted] compared to [redacted]). *See* Size Protest at 14-15.

64. PMTech's size protest also cited Excalibur's proposal as stating that [redacted]. *Id.* at 15.

65. PMTech's size protest also showed that Excalibur's proposal repeatedly referred to [redacted] and that Excalibur claimed that the [redacted] had [redacted] when, in fact, [redacted] *Id.* at 16-17.

66. Under SBA precedents, all of the facts in the previous three paragraphs are considered an indication that a small business is not capable of performing a

contract without undue reliance on another contractor. Nevertheless, SBA Area V did not even address these facts in its size determination.

67. PMTech received the size determination on January 30, 2008. The size determination concluded that Excalibur was not unduly reliant on CSC. The size determination was not marked as containing protected material. At the request of counsel for Excalibur, counsel for PMTech did not provide the size determination to PMTech. Counsel for Excalibur provided counsel for PMTech with a redacted copy of the size determination on February 7, 2008, which redacted copy was provided to PMTech on that same date.

68. Under SBA's rules, PMTech had 15 days from receipt of the size determination to file an appeal from the determination with SBA's Office of Hearing and Appeals ("OHA"). *See* 13 C.F.R. § 134.304(a)(i).

69. PMTech acted expeditiously to have OHA review the legal and factual errors in the SBA Area V size determination. Rather than wait the permitted 15 days to file the size appeal, PMTech timely filed its size appeal with OHA on February 1, 2008 – two days after the size determination was received and six days before PMTech saw a redacted copy of the size determination.

70. PMTech's size appeal asserted that the size determination was contrary to the law and the facts. Among other things, although SBA Area V found that Excalibur was "proposing to use [redacted] from the [redacted] the size determination found that did not constitute undue reliance because of the "[redacted] . . . ." Size Determination at 13. Essentially, SBA Region V

decided that Excalibur's reliance on CSC was not undue reliance because Excalibur [redacted]. That finding of SBA Area V is not correct. [redacted] Moreover, DOE itself found that PMTech met the requirements of the RFP without proposing key employees of CSC.

71. On information and belief, SBA Area V received erroneous information or argument from DOE and/or Excalibur regarding [redacted]

72. The SBA Area V size determination made the finding about the [redacted] without giving PMTech an opportunity to address that subject, thus depriving PMTech of its statutory right to participate in agency proceedings that affect PMTech's rights.

73. After PMTech filed its size appeal with OHA on February 1, 2008, DOE notified PMTech that it had made award of a contract to Excalibur on that same day.

74. Under OHA's rules, "OHA will not review a formal size determination where the contract has been awarded and the issue(s) raised in a petition for review are contract specific, such as compliance with the ...ostensible contractor rule [.]" *See* 13 C.F.R. § 121.1101(b).

75. On February 7, 2008, Excalibur filed a motion to dismiss PMTech's size appeal at OHA on the basis that DOE had made award to Excalibur. In its motion, Excalibur relied on 13 C.F.R. § 121.1101(b).

76. Excalibur's motion to dismiss presently is pending before OHA. Excalibur essentially argues that DOE's February 1, 2008 award to Excalibur divested OHA of jurisdiction to review PMTech's size appeal and prevents OHA from deciding whether the SBA Area V size determination was arbitrary. To the extent that Excalibur's argument prevails, PMTech will be deprived of due process and/or of its statutory right to participate in proceedings that affect its interest. The Court does have the ability to review the arbitrary action in question. *See, e.g., Advanced Systems Technology, Inc. v. U.S.*, 69 Fed.Cl. 474 (2006). The Court also has the ability to declare that DOE's award to Excalibur should not be given effect, and that the *status quo ante* should be restored until OHA issues a decision on the merits of PMTech's size appeal.

77. A copy of PMTech's size protest is attached as Exhibit A

78. A copy of SBA's size determination is attached as Exhibit B.

79. A copy of PMTech's size appeal petition (including the Declaration of Jo J. Giacomini, but not including Exhibit A to that Declaration) is attached as Exhibit C.

**<u>Award to Excalibur and PMTech's Debriefing</u>**

80. On February 1, 2008, DOE issued a notice of award to Excalibur. The notice of award stated that the contract price was $55,203,285.

81. DOE's website states that the contract price was $20,997,603. << http://e-center.doe.gov/iips/busopor.nsf/d0a2a49988bbfdc4852566b7006c9498/1df79188f6c505f985257258004ced11?OpenDocument >> (visited February 7, 2008).

82. On February 7, 2008, Excalibur filed a document with OHA indicating that the award to Excalibur was in the amount of $100,000. That same document also indicated that Excalibur had submitted an offer to DOE on January 31, 2008. This may indicate that DOE and Excalibur engaged in negotiations after Excalibur had been

selected for award. It also may indicate that DOE has not, in fact, awarded the contract which is the subject of the RFP to Excalibur.

83. DOE's February 1, 2008 notice of award included as an attachment a summary of DOE's evaluation of PMTech. That attachment indicated that PMTech's proposal had been assigned [redacted]. A copy of the February 1, 2008 notice is attached as Exhibit D.

84. On February 8, 2008, DOE held a debriefing for PMTech. A copy of the document titled PMTECH Debriefing and provided by DOE to PMTech at the debriefing, is attached as Exhibit E.

**Misevaluation of [redacted]**

85. At the debriefing DOE provided the following definitions of "strength" and "weakness" used in the evaluation:

- A strength is defined as an attribute that increases the probability of successful performance.
- A weakness is a flaw that increases the risk of unsuccessful contract performance.
- A significant weakness is a flaw that appreciably increases the risk of unsuccessful contract performance.

*See* Exhibit E at 2.

86. DOE assigned PMTech [redacted].

87. [redacted]

[redacted] DOE's assignment of separate weaknesses for [redacted] but failure to assign separate strengths for [redacted] was arbitrary.

88. [redacted].

89. DOE arbitrarily assigned [redacted].

90. [redacted].

91. [redacted].

92. DOE arbitrarily assigned [redacted].

93. [redacted]. Therefore, it was arbitrary for DOE to [redacted] without any opportunity for clarification.

94. [redacted].

**Misevaluation of [redacted]**

95. The RFP section L.19 Criterion 2 addressed the Technical Approach for day to day management. Overall this section reflects DOE's desire for program efficiency and flexibility amongst personnel. *See* RFP §L.19 at 72.

96. The RFP required offerors to describe how they proposed to provide and apply day-to-day operating and special response procedures for quick reaction to Government needs. RFP § L.19 at 73. In meeting this requirement offerors were to demonstrate how contract personnel would interact to enhance contract performance. *Id.* Specifically, the RFP required offerors to:

> [D]escribe its plan to facilitate the exchange of expert nuclear weapon knowledge between guidance writing teams and document review teams; to select the best individuals for various tasks, based on specific type of information that must be reviewed and/or analyzed; and how it will facilitate enhanced interaction between the guide writers and guide users (document reviewers) that will result in more comprehensive guidance documents that better respond to real-life scenarios and current declassification issues.

*Id.* Further, the offeror was to "describe its ability to shift employees between tasks depending on work flow, taking into consideration potential periodic reduction or surges in the different contract areas." *Id.*

97. In order to meet the requirements [redacted].

98. Despite the fact that PMTech's proposal [redacted], DOE arbitrarily [redacted].

99. PMTech's proposal of [redacted]

[redacted].

100. DOE also arbitrarily assigned [redacted].

101. Further, in the debriefing DOE stated that [redacted].

102. In its proposal, PMTech [redacted].

103. PMTech further demonstrated [redacted]:

[redacted]

*Id.*

104. [redacted].

105. The RFP performance work statement addressed a requirement for training programs as follows:

> Support classification training by developing, scheduling, and conducting formal training courses, performance based training programs, and computed-based classification and control training at DOE Headquarters, field, and other agency locations, as required. Work may include, but it is not limited to:

> Developing performance-based tests; Scheduling, monitoring, administering, and tracking the training and testing programs; and Developing, revising, editing, reproducing, and distributing training and educational materials, such as pamphlets and brochures.

*See* RFP, Attachment A, Section C, Performance Work Statement at 18.

106. DOE arbitrarily assigned [redacted].

107. Contrary to DOE's finding, [redacted].

108. [redacted].

109. The Performance Work Statement [redacted]

**Misevaluation of [redacted]**

110. DOE's assignment of [redacted].

111. In the debriefing, [redacted].

112. [redacted].

113. Further, [redacted].

114. DOE also [redacted].

115. [redacted].

116. [redacted].

117. [redacted]:

[redacted]

[redacted].

118. [redacted].

119. DOE's [redacted].

120. DOE evaluated [redacted]:

[redacted]

[redacted].

121. DOE's assessment was arbitrary. [redacted].

122. DOE's [redacted]

[redacted] This proposal was in response to the RFP section L.19 that states, "[t]he offeror should describe, in detail, any other plans that will enhance contract performance, including but not limited to approaches that will enhance contractor responsiveness or provide performance efficiencies." RFP § L.19 at 73. [redacted]

123. Further, [redacted].

**<u>Misevaluation of [redacted]</u>**

124. The RFP stated that past performance of the offeror and all major subcontractors would be assessed. RFP § M.3 at 95.

125. With respect to PMTech's [redacted].

126. [redacted].

127. Also, [redacted].

128. Contrary to the RFP, DOE arbitrarily [redacted].

129. DOE assigned [redacted]. That was arbitrary.

130. On information and belief, [redacted]

131. It appears from the SBA size determination that [redacted] Size Determination at 9-11. Thus, [redacted]

132. [redacted] *See* Exhibit E at 2. That was arbitrary.

**Count I**
**(Violation of the Competition-in-Contracting Act: Arbitrary Evaluation of PMTech's Proposal and Unfair Treatment of PMTech)**

133. PMTech incorporates paragraphs 1 through 132 of this Complaint as if fully set forth herein.

134. DOE evaluated PMTech's proposal arbitrarily and not in accordance with the evaluation criteria announced in the RFP.

135. DOE arbitrarily assigned weaknesses and significant weaknesses to PMTech's proposal.

136. DOE arbitrarily failed to assign strengths and significant strengths to PMTech's proposal.

137. DOE arbitrarily assigned PMTech a rating of [redacted] or [redacted] for [redacted]. Exhibit E at 2.

138. DOE arbitrarily assigned PMTech a rating of [redacted] or [redacted] for [redacted]. *Id.*

139. DOE arbitrarily assigned PMTech a rating of [redacted] or [redacted] for [redacted]. *Id.*

140. DOE arbitrarily assigned PMTech a rating of [redacted] or [redacted] for [redacted]. *Id.*

141. DOE failed to give PMTech an opportunity to clarify a clerical error in its proposal.

142. DOE unreasonably refused PMTech's request for additional time to respond to DOE's discussion questions.

143. DOE's treatment of PMTech and evaluation of PMTech's proposal violated CICA and the FAR and deprived PMTech of a fair opportunity to compete for the work covered by the RFP. If PMTech's proposal had been evaluated in accordance with the RFP, PMTech would have had a reasonable likelihood of being selected for award of the work.

**Count II**
**(Violation of the Competition-in-Contracting Act: Arbitrary Evaluation of Excalibur's Proposal)**

144. PMTech incorporates paragraphs 1 through 132 of this Complaint as if fully set forth herein.

145. Upon information and belief, DOE evaluated Excalibur's proposal arbitrarily and not in accordance with the evaluation criteria announced in the RFP. Among other things, [redacted]

146. Upon information and belief, DOE assigned strengths and significant strengths to Excalibur's proposal arbitrarily and arbitrarily failed to assign weaknesses and significant weaknesses to Excalibur's proposal.

147. Upon information and belief, DOE arbitrarily assigned [redacted]

148. On information and belief, DOE also conducted improper discussions with Excalibur after the due date for submission of proposals, as evidenced by Excalibur having submitted an offer to DOE on January 31, 2008.

149. DOE's evaluation violated CICA and the FAR and deprived PMTech of a fair opportunity to compete for the work covered by the RFP. If Excalibur's proposal had been evaluated in accordance with the RFP, PMTech would have had a reasonable likelihood of being selected for award of the work.

**Count III**
**(Violation of the Competition-in-Contracting Act: Misleading Discussions)**

150. PMTech incorporates paragraphs 1 through 132 of this Complaint as if fully set forth herein.

151. During discussions held in September 2007, DOE stated that at least [redacted] were too low.

152. Based on DOE's statements, PMTech increased [redacted] its proposed estimated costs.

153. In DOE's notice of award, DOE stated that Excalibur was selected, in part, because it offered the lower evaluated cost. *See* Exhibit E at 3.

154. DOE's misleading discussions with PMTech violated CICA and the FAR and deprived PMTech of a fair opportunity to compete for the work covered by the RFP. If DOE had not held misleading discussions with PMTech, PMTech would have had a reasonable likelihood of being selected for award of the work.

**Count IV**
**(Violation of the Competition-in-Contracting Act and Small Business Act: Selection of a Large Business for a Set-Aside Contract)**

155. PMTech incorporates paragraphs 1 through 132 of this Complaint as if fully set forth herein.

156. As discussed above, the RFP was set aside for small business concerns.

157. DOE has awarded a contract to Excalibur despite knowing that Excalibur is unduly reliant on large business CSC. SBA's regulations at 13 C.F.R. § 121.405(b) prohibit a contracting officer from ignoring "credible information which causes the contracting officer or SBA to question the size of the concern." The word "or" means that the contracting officer may not blindly follow SBA's size determination.

158. To the extent DOE provided information to SBA indicating that there was a [redacted], DOE improperly influenced the size determination and favored the position of Excalibur. To the extent that DOE did not provide such information to SBA Area V, DOE knew or should have known that the size determination was based on a critical finding that was false. Under either set of circumstances, any reliance by DOE on the SBA decision would be arbitrary.

159. Upon information and belief, DOE has made an award to Excalibur because DOE wants to continue to receive the Guidance Development work from CSC.

160. DOE's award to Excalibur violated CICA, the FAR and the SBA regulations and deprived PMTech of a fair opportunity to compete for the work covered by the RFP. If DOE had not awarded to a firm that does not qualify as a small business for purposes of this RFP, PMTech would have had a reasonable likelihood of being selected for award of the work.

**Count V**
**(Violation of 5 U.S.C. § 555(b):**
**Failure to Allow PMTech to Comment on the Crucial New Information that the SBA Area Office Relied on in its Size Determination)**

161. PMTech incorporates paragraphs 1 through 132 of this Complaint as if fully set forth herein.

162. The SBA Area Office found that Excalibur was [redacted]

163. The SBA Area Office apparently acknowledged that such a fact ordinarily would be a basis for finding undue reliance, yet the Area Office found that this case was purportedly unique.

164. Section 555(b) of Title 5 of the U.S. Code grants interested persons the right to be heard in matters pending before administrative agencies.

165. By failing to give PMTech an opportunity to be heard regarding the alleged uniqueness of the facts on which it based its size determination, SBA violated 5 U.S.C. § 555(b).

166. In addition, SBA violated PMTech's due process rights.

**Count VI**
**(Violation of 5 U.S.C. § 555(b):**
**Failure to Fairly Consider PMTech's Size Appeal)**

167. PMTech incorporates paragraphs 1 through 132 of this Complaint as if fully set forth herein.

168. Section 555(b) of Title 5 of the U.S. Code grants interested persons the right to be heard in matters pending before administrative agencies.

169. The Court of Federal Claims has held that 5 U.S.C. § 555(b) grants a size protestor the right to be heard by OHA. On information and belief, DOE's failure to consider Excalibur's undue reliance on CSC, DOE's failure to correct the erroneous factual finding made by SBA Area V and DOE's award of the contract to Excalibur together are calculated to deprive PMTech of its right to have the size issues fairly decided by SBA. To the extent that OHA finds that DOE's contract award to Excalibur divests it of jurisdiction to hear PMTech's size appeal, absent intervention by this Court, PMTech will be deprived of its right to be heard in an agency adjudication as required by 5 U.S.C. § 555(b).

170. DOE's actions, SBA's process as applied here and the SBA Area V size determination have deprived PMTech of the ability to obtain a contract to which it may be lawfully entitled.

171. This Court has the power to return the parties to the status quo that existed before DOE made award to Excalibur.

172. To the extent that dismissal of PMTech's size appeal is dictated by any SBA regulation, that regulation violates 5 U.S.C. § 555(b).

**Count VII**
**(Violation of Small Business Act, CICA, and 48 C.F.R. § 19.502-2 and 48 C.F.R. § 19.202-1)**

173. PMTech incorporates paragraphs 1 through 132 of the Complaint as if fully sets forth herein.

174. The Small Business Act, 15 U.S.C. § 631(j)(3) requires agencies to "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors."

175. The reach of the restrictions against bundled procurements in CICA is even broader than the reach of restrictions against bundling under the Small Business Act, *i.e.*, CICA prohibits bundling unless the agency has a reasonable basis for its contention that bundling is necessary. *See* 41 U.S.C. § 253a(a)(2)(B). CICA and its implementing regulations require that the scales be tipped in favor of ensuring full and open competition, whenever concerns of economy or efficiency are being weighed against ensuring full and open competition. Under this analysis, the issue is not whether there are any potential offerors which can surmount barriers to competition by, for example, entering into teaming or partnering agreements, but rather whether the barriers themselves—here, bundling—are required to meet the government's needs. *See Phoenix Scientific Corp.*, B-286817, 2001 CPD ¶ 24; *EDP Enterprises, Inc.*, B-284533.6, 2003 CPD ¶ 93.

176. FAR 19.502-2(b) provides that the contracting officer shall set aside acquisitions for small business participation "when there is a reasonable expectation that - (1) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns...."

177. On information on belief, the contracting officer set aside the RFP without having such reasonable expectation.

178. DOE documents, including the October 13, 2006 review of capability statements, indicate that, prior to setting aside the acquisition, the contracting officer had no expectation that she would receive an offer from Excalibur for the work.

179. The FAR discourages agencies from bundling multiple requirements into a single acquisition because that is detrimental to small businesses such as PMTech. *See* FAR 19-202, 7.103 and 10.001.

180. On information and belief, DOE did not satisfy the requirements of the FAR before bundling the Guidance Development work and the Document Review work in a single acquisition.

181. On information and belief, DOE bundled the contract work and set it aside for small business, in part, in an effort to continue using the services of large business CSC for the Guidance Development work.

182. The fact that SBA Area V found that Excalibur [redacted], and the fact that DOE accepted that finding of SBA, confirms that Excalibur did not submit the product of a small business concern. See FAR 19.502-2(b). And DOE's acceptance of SBA's finding that small business offerors [redacted] further confirms that when DOE bundled the two contracts, it never expected that it would receive offers from at least two responsible small businesses offering the products of small businesses.

183. DOE's actions have prejudiced PMTech. But for DOE's improper conduct, DOE would have been required to set aside the Guidance Development work for small business and PMTech would have had a reasonable opportunity to win the contract for the Guidance Development work.

**Prayer for Relief**

WHEREFORE, PMTech respectfully requests that this Court issue the following relief:

1. A declaration that DOE's award to Excalibur violates CICA and the FAR;
2. A declaration that DOE must terminate its contract with Excalibur;
3. A declaration returning the parties to the status quo that existed prior to DOE's award of a contract to Excalibur;
4. Preliminary and permanent injunctions prohibiting DOE from obtaining the work covered by the RFP from Excalibur;
5. An order and judgment directing DOE to reevaluate proposals in accordance with the evaluation criteria and applicable law;
6. A declaration that SBA's failure to give PMTech a meaningful opportunity to participate in the size determination process violated 5 U.S.C. § 555(b);
7. A declaration that SBA's failure to give PMTech a meaningful opportunity to participate in the size determination process violated the Due Process clause of the 5th Amendment to the U.S. Constitution;
8. Alternatively, a declaration that DOE improperly bundled the Guidance Development and the Document Review work;

9. A declaration that DOE's actions were not substantially justified and that PMTech is entitled to attorneys fees under the Equal Access to Justice Act; and
10. Such other relief as may be proper.

DATED: February 19, 2008

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

Kenneth B. Weckstein
1227 25th Street, N.W.
Washington, D.C. 20037
(202) 861-1860
(202) 861-3560 (FAX)
Kweckstein@ebglaw.com

Counsel for Plaintiff PMTech, Inc.

Of Counsel:
Shlomo David Katz
1227 25th Street, N.W.
Washington, D.C. 20037
(202) 861-1809
(202) 861-3509 (FAX)
skatz@ebglaw.com